BERTELL W. KING et al., Plaintiffs, *v.* INCORPORATED VILLAGE OF OCEAN BEACH et al., Defendants.

Supreme Court, Special Term, Suffolk County, November 10, 1954.

*Guy O. Walser* for plaintiffs.

*Leroy B. Iserman* for defendants.

COLDEN, J.  The plaintiffs, all property owners of the Village of Ocean Beach, Suffolk County, New York, bring this action for judgment declaring unconstitutional and void a duly adopted ordinance of the said village, which became effective on November 25, 1953, and which they claim deprives them of their property without just compensation.

The Village of Ocean Beach is located on what is known as Fire Island, which is a narrow strip of beach and sand dunes lying off the south shore of Long Island, bounded on the north by Great South Bay and on the south by the Atlantic Ocean.

The ordinance here challenged affects the land on the entire ocean front of the village within an area approximately 1,600 feet in length and 100 feet in depth, bounded on the north by the southerly line of Ocean Walk, which is the most southerly east-west walk of the village, on the south by the high-water mark of the Atlantic Ocean, on the west by Surf Road, the most westerly street in the village and on the east by Surfview Walk, the most easterly street of the village.

The ordinance in question provides in substance, (1) that no structure of any kind shall be constructed or maintained on any land lying within the affected area, (2) that no structure of any kind, now existing on land within that area, shall be enlarged by structural alteration or otherwise, and (3) that in the event any existing structure now located within that area shall be destroyed, demolished or removed by the action of the elements, by the owner or otherwise, or so substantially destroyed that the structure, in the sole judgment of the board

of trustees of the village, amounts to a total loss, then it may not be replaced with any other kind of structure. In short, the owners of the property affected can neither build, enlarge nor replace a structure thereon. All they can do, in the words of counsel for the defendants, is: "They can still walk on it."

The avowed purpose and ultimate result of the ordinance is to create a structure-free buffer zone from the crest of the dunes north to Ocean Walk. Since 1930 successive storms in the area have made inroads on the high sand dunes which are the natural protection for the entire village. Past efforts by the village have failed to arrest this erosion. The village is unwilling to erect stone jetties for that purpose, declaring in the preamble to the ordinance that all engineering advice indicates that nothing further can be done to protect the village on the ocean front, while houses remain erected on the sand dunes, since sand must be deposited on the top thereof and allowed to fill in on both sides of what was originally the crest of the dunes.

Plaintiffs contend that the ordinance in question is an unconstitutional exercise of legislative power; it is confiscatory in that its effect is to take private property for public use without just compensation.

The defendants justify the ordinance on the ground that it was enacted in the exercise of the right of the village to promote the public welfare and to protect the lives and property of its inhabitants; that the ordinance is not confiscatory because by the act of the Almighty or otherwise the sand dunes may be rebuilt during the passage of time to the extent that the presence of houses thereon will no longer endanger either the dunes or the houses; that in any event, erosion by the sea has already washed away substantial portions of vacant land rendering the property of the plaintiffs practically worthless; that the cost of insurance against water or other damage on any structure erected on their property is prohibitive; that the desirability of building thereon has ceased to exist — the very next storm may carry away the houses already erected; that instead of confiscating plaintiffs' property, the ordinance will actually protect their lands and enable plaintiffs eventually to use them, while at the same time shielding all other property within the village, as well as the lives of its inhabitants. In short, the ordinance "is an emergency proposition." As stated in defendants' brief: "If the time should ever arise when the elements slacken their devastating erosion effects and accretion

again sets in, the plaintiffs will still have their lands to use as they see fit.''

The facts, however, are that this is not an emergency proposition. One of the defendants' principal witnesses testified that no work would be undertaken until the present structures on the dunes are gone. When asked, '' No matter how long that was ''? he answered, '' Yes, sir. We wouldn't recommend it to be done with the houses there.''

The proof shows that individual lots which had a value of some $900 each, prior to the ordinance, now have a nominal value of $1. An application by one of the plaintiffs for a building permit has been denied on the basis of the ordinance. While plaintiffs must continue to pay taxes, their property has lost its economic value. Houses which are already built may be used, but cannot be enlarged or replaced, and lots which are vacant may not be built upon. How long this condition will last is uncertain. The life of the ordinance is, under the circumstances, unlimited, as is the burden it imposes upon plaintiffs' property.

The legislative power of the State is not plenary but is limited by the Constitution, Federal and State. Private property may not be taken without compensation, even for a public purpose and to advance the general welfare. (*Matter of Eaton* v. *Sweeny,* 257 N. Y. 176.)

This court is therefore of the opinion that the ordinance is confiscatory and an attempt to accomplish without compensation what may only be done legally through the exercise of the power of eminent domain. The purposes which led to the enactment of the ordinance, though laudable, are not sufficient to warrant the taking of private property without paying for it. '' While property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.'' (*Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393, 415.) As Mr. Justice HOLMES warned in that case, at page 416: '' We are in danger of forgetting that a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change.''

It follows that judgment must be granted in favor of the plaintiffs as prayed for in their complaint, but without costs.

Settle judgment on notice.