J. Seward Bodine, J.
Pursuant to section 30 of the Highway Law, the State appropriated a portion of the land owned by the claimant, situate in the Town of Gates, Monroe County, for the construction and reconstruction of Chili Road, Part 1, State Highway No. 254, as shown on Map No. 34, Parcel No. 24, by filing a copy of said-map and description in the office *11 of the Department of Public Works on June 27, 1958, in the Department of 'State on June 30, 1958, and in the Monroe County Clerk’s office on September 17,1959, which is the date of appropriation. The court adopts the description of the appropriated property as set forth in the map filed in the County Clerk’s office, a copy of which was attached to the claim, and reference is made thereto for such description without repetition.
This claim was duly filed on November 7, 1960, and has not been assigned or submitted to any other court or tribunal for adjudication.
The land taken, a parcel of 1.402 acres, was on the south side of Chili Road and was taken without access and thereby isolated a remaining area consisting of 0.798 acre.
At the time of the taking, the claimant owned property on both sides of the road, and on the north side of the road were located, among other things, a wholesale bakery, a dairy and ice cream manufacturing plant, a drive-in ice cream parlor and refreshment stand, all of which had been in existence for a considerable period of time prior to the appropriation. The land on the south side of the road was not developed at all and was not used as a part of the business except as a parking space.
The appropriation map described the property taken, all of which was located entirely south of the south line of the old highway and contained 1.402 acres more or less. The map contained the following purported reservation “reserving” a right of access to the owner of the property abutting Parcel 24 on the north:
‘‘ DRIVEWAY RIGHT OF WAY :
‘‘ Reserving, however, to the owner of the property abutting said Parcel No. 24 on the north and such owner’s distributees and assigns, but only to an extent which will not interfere with the use of the property for highway purposes, the right of access to and from the highway for retail store purposes only, at the places of entry and exit for access purposes with a width of 40 feet along the old highway boundary, with the center of such place of entry and exit being radially opposite survey baseline Station 0132+58.0+ for driveway right of way No. 1; a width of 40 feet along the old highway boundary, with the center of such place of entry and exit being radially opposite survey baseline Station C131+26.0± for driveway right of way No. 2, as shown and designated on the above map. Such right of access shall terminate and become permanently extinguished *12 providing the aforementioned right of access is being subjected to any use other than for retail store purposes.”
The claimant contends that this purported reservation, in effect, deprives it of all access to the property north of the highway, and that it is entitled to be paid the full value of the land and buildings, and that, therefore, the damages should be in the neighborhood of $285,000.
The State, on the other hand, contends that the property on the north side of the highway is not affected in any way because the land appropriated is- wholly and entirely south of the south boundaries of the highway. The claimant also contends that the property was operated as a unit ¡and that any taking from the property on the south affects the whole property. With respect to this latter contention, it is the opinion of the court that the evidence does not support it. The property on the south side of the road was not used by the claimant for anything except occasional customer parking and, in fact, most of it was zoned residential; moreover, the area in which the appropriation occurred was physically separated from the area to the north by the highway. - The court accordingly finds that the taking herein, being entirely from the south side of the road, does not affect the property on the north side.
We now proceed to a consideration of the so-called reservation hereinabove quoted, purporting to restrict access to the property on the north side of the road. In the course of the reconstruction of Chili Road, the reconstructed highway was placed so that the northerly line of the pavement thereof is now approximately at the southerly line of the former highway, which former highway has now reverted for maintenance purposes to Monroe County. (Highway Law, § 62.) Prior to the appropriation and reconstruction of Chili Road, the claimant’s property on the north abutted Chili Road. The State has given the claimant two 40-foot rights of way for access purposes to the reconstructed highway. As an abutting owner, the claimant has a right of access to and from the highway. (Griefer v. County of Sullivan, 246 App. Div. 385, affd. 273 N. Y. 515.) The claimant’s rights are subject to the right of the State to regulate and control the highway for the benefit of the traveling public. (Perlmutter v. Greene, 259 N. Y. 327.) The State has designated the location of the claimant’s access, and although the former highway location has reverted to the County of Monroe for maintenance purposes, we find the instant case distinguishable from Robinson v. State of New York (3 A D 2d 326) and we find that the claimant has suitable access from his property to the reconstructed Chili *13 Road. (Holmes v. State of New York, 279 App. Div. 489; Selig v. State of New York, 10 N Y 2d 34.)
We regard the reservation hereinabove quoted, purporting to limit access on the north side of the road to retail store purposes only, as a nullity. Section 30 of the Highway Law appears not to have been designed or intended to authorize the condemnation of easements of this character. Statutes conferring the power of eminent domain are not extended by inference or implication, and we find that the Superintendent of Public Works had no power under the appropriation statute to impose a restriction of this character. (Schulman v. People, 10 N Y 2d 249.)
“ The rights of an abutter are subject to the right of the State to regulate and control the public highways for the benefit of the traveling public. (Sauer v. City of New York, 180 N. Y. 27; Ryan v. Preston, 59 App. Div. 97.) (See Perlmutter v. Greene, 259 N. Y. 327; Kane v. N. Y. Elevated R. R. Co., 125 N. Y. 164,176. Cf. Miller v. State, 229 App. Div. 423; Farrell v. Rose, 253 N. Y. 73.) Although the abutting owner may be inconvenienced by a regulation, if it is reasonably adapted to benefit the traveling public he has no remedy unless given one by some express statute.” (Jones Beach Blvd. Estate v. Moses, 268 N. Y. 362, 368.)
There is no evidence to support a finding herein that the purported restriction is reasonably adapted to benefit the traveling public or anybody else, and we therefore find that even if the State attempted or intended to limit such access under its police power, it has not done so.
The State contends that the fair value of the land appropriated and isolated, consisting of 2.198 acres, after deducting a nominal value of $300 for the lot isolated after the appropriation, was $38,000.
The claimant contends that its damage due to the taking on the south side of the road is $41,800, and that provision must also be made to produce an income sufficient to pay the annual taxes on the residuary lot in the sum of $4,500, making a total of $46,300.
The court finds that the damage to the claimant on account of such taking is the sum of $40,000, and that the State has already paid to the claimant on account of such damage, on April 27, 1960, the sum of $13,800. The court finds, therefore, that the claimant is entitled to an award in the sum of $26,200, with interest from September 17, 1959, to March 17, 1960, and interest again from November 7, 1960, to the date of entry of judgment herein.
*14 The court has viewed the property.
The court further directs that the Clerk of the Court of Claims record a certified copy of this decision in the Clerk’s office of the County of Monroe and have the same indexed on the margin of the appropriation map, which was recorded in said Clerk’s office on September 17,1959.